Welcome to Bancorp Services I'd like to, in my time, make four points to your honors today. Four errors that I think that the District Court made, and I'd like to highlight. First is, we believe that the District Court could err by not conducting its own formal claims construction analysis of the phrase issued on this appeal, surrender bond protected investment credits. But rather, it pulled out a sentence from this court's prior ruling in the Hartford case, and we don't think that was appropriate, we don't think that that was a formal claim construction. The second point I'd like to make, the second error that the District Court committed, was finding non-infringement, even though the single element on which MetLife moved, the absence of surrender value protected investment credits, even by MetLife's own construction, the court found that was present in the accused's product. The court found that the single element was present, but nevertheless, found non-infringement, even though it was there. Third point, your honors, third error that we believe the court made, was finding non-infringement by pointing to a non-existent limitation in the patent, and saying, well, this credit that's being calculated wasn't part of the administration of the separate account of stable value globally, when there was no limitation for limiting the claims to administration claims, and the court didn't even engage in an analysis to determine if that was the case. Can you dispute whether the preamble is a limitation? We don't believe the preamble is a single claim that administration appears in. Just to back up, yes, administration appears in one claim, not in any of the other claims. What about managing? Managing appears, yes it does, your honor, but managing is not the same thing as administration. It's a different word. And our point on this issue is that this limitation that the court found was not subject to any claim construction analysis. In other words, it's black-letter law that in order to conduct an infringement analysis, it's a two-step process. The first step is to look at it. I think you'd be better off addressing the merits of the claim construction issue rather than complaining about the process that the district court followed. Okay. I will come to that in one second, your honor. If I could just tell you the fourth point that I'd like to make is that we believe that the district court committed error by not applying the summary judgment standard appropriately, by not permitting us discovery under the clearance that were part of the motion. Coming back to your question, your honor, the issue of whether the federal circuit in the prior case issued a formal claim construction of the phrase, surrender value-protected investment credit. We believe the federal circuit did not intend to do that. The issue before the federal circuit in the Hartford matter was the issue of whether there was indefiniteness. And in particular, the issue was there was this phrase, surrender value-protected investment credit, which did not appear in the specification. And Hartford alleged in this prior case that the phrase, because it didn't have an antecedent basis, and because they alleged it didn't have an ordinary meaning in the art, that this phrase was indefinite. My client in that case said this phrase, surrender value-protected investment, means the same thing. It was intended to mean the same thing as stable value-protected investment, as that phrase was used in the specification repeatedly. And the issue before the- Your argument is that the phrase means the amount of credit, guaranteed credit, that's added as opposed to the difference between both. Yes, your honor. If you look at the specification here, you can see that that's clearly in the specification what they're talking about. And the whole point of the stable value protection is you've got a market value and you've got a book value. And there's an algorithm that's disclosed in the patent. It doesn't have to be that particular algorithm, but there's an algorithm that's used in which, at the end of the day, you want the book value and the market value to be the same thing. That's the way the investment works. And so there's an algorithm that you use periodically to change what's called a targeted return. So you pick a point where you want the book value to be. And then, as you're processing this on a daily basis, you credit that stable value, investment value or book value, which you're calling it. You credit it to make it reach that targeted return. And then you reset the targeted return based on the market, and you credit it daily to get it to the next targeted return. And that's what that element is talking about, crediting the stable value, the investment value. What you're doing is you're increasing the book value by a certain amount to make it reach that targeted return. I'm very sympathetic to your argument about how the claim should be construed in light of my reading of the specification. But you would agree, wouldn't you, that if a prior panel of this Court construed the claims, given that claim construction is, of course, something above all, that I'm down by it? I would submit, Your Honor, that the Federal Circuit in this panel was focused on this issue that I was going to, whether surrender value protection investment. The answer is yes, right? If we construed it before, that's it. If you construed it before, yes. But I don't believe it was construed. And the prior opinion says surrender value. Surrender value of protected investment credits means the difference between the actual value of a protected investment and the targeted return value of that investment at the time, blah, blah, blah. How can you say that that's not the construction of that term? They have the term in quotes, quoting directly from the claim, and then they follow the word it means, and then they have a definition. And this is their explanation for why this claim is not indefinite, because they clearly know what this term means, and they tell us as much. So I really have to tell you that I'm sympathetic to your claim construction arguments, but it's not before me. Well, Your Honor, the next sentence, if you look at the next sentence, and this is part of an analysis, and the analysis is indefinite. And if you look, for example, if you're looking at the opinion, Your Honor, that you're reading from subsection B of section 2 of the opinion, section A, subsection A, talks about the law is the legal analysis, and they don't talk about fill-ups or electronics or claim construction. They talk about that, first of all, we don't need to articulate things in opinions that are well decided before, right? The idea of opinion is to focus on what's the issue. There's no reason to go through the law of claim construction necessarily in every case that you happen to be construing a claim in. They clearly say this is what it means. No, I agree, Your Honor, that that doesn't have to happen. But what we're looking at, I would submit, is somewhat ambiguous. The sentence says what it says. But the very next sentence, Your Honor, if you look at it, says, we conclude that the term surrender-value-protected investment is not indefinite, but instead has essentially the same meaning as the term stable-value-protected investment. Now, notably, Your Honor, the whole- Essentially the same meaning. So you would like it to have the exact same meaning, am I right? No, no. My point is simply this. If you look at this, this was the question. Does that phrase have the same meaning? Because if you read on, it says, which the parties agree has a well-understood meaning. They say the parties agree that stable-value-protected investment has a well-understood meaning, that this term is essentially the same thing. And here's the definition of it. Essentially the same things means not identically the same thing. And that's why we're giving you the definition. Your argument is falling on deaf ears. I'm sorry. Why don't you turn to the other claim construction issue? Okay, Your Honor. I will do that. Just one final really, really brief thing is if this- You notice the whole phrase is not in the sentence, Your Honor. The court just says surrender-value-protected investment. Not the whole phrase. Surrender-value-protected investment credits. Surrender-value-protected investment credits means the difference. No, I understand that. I was talking about the next sentence where they reach their conclusion on indefiniteness, Your Honor. I'll move on. Moving on to the other points. The second point, as I said, was we believe that the district court committed the error. By even assuming you take the MetLife construction that the district court adopted in the Federal Circuit, MetLife moved on what it called the single element, stable-value-protected investment credit. We showed through documents that MetLife calculates that. Not only did we show it, MetLife admitted after we provided the evidence in their papers. But they say they don't do it in the course of administering these particular life insurance programs. I understand your argument, right, is that that's not a requirement of this claim. Is that right? A claim you want. It doesn't have to be done in the course of administering these programs. Yes. Two points. That's one point. Let's stay on that one. Okay. Okay. And you say that. I mean, I recognize the district court didn't proffer a claim construction preamble below, and the great particularity would have been very helpful for her to do that. But what about managing a life insurance policy? Your argument on appeal is, I understand you right now, that's different from administering. No. My argument, the first argument is the court should have, rather than just say it's not part of administration, there's no analysis at all. And if you look at the claims, at a minimum, we should be entitled to at least looking at the claims and figuring out what is the word, the court used the word administration. So looking at the claims, there's only one claim that even uses that word, Your Honor. But they use managing. I mean, they use managing. And the specification makes clear, doesn't it, that that's what is being described here, is that it's making these calculations in the administration or management of the policy. Absolutely, Your Honor. You can call it management. You can call it administration. You can call it reporting. You can't say those two words are absolute synonyms for claim construction purposes, are you? I thought I understood your argument to be that the words are different, that claim 19 uses administration and claim 1 uses management. And simple claim differentiation suggests to me that they should be construed differently. Absolutely. Absolutely. That's one argument. And would you say that your argument is supported? Because I was actually surprised from the referees when they point out all your discovery requests and then try to equate administration and management to the idea that you admitted as much. They say, in all your requests you say, please give us everything that talks about whether you administer or manage these systems. It seems to me that if they were identical, you would need to put the two words in every single discovery. Absolutely, Your Honor. And I need to reserve some time, but one final point on this is, even if there was a limitation to administration, which we dispute, the evidence shows, Your Honor, the documents that we cited show that MetLife does make this calculation for administration. We cited to an email in 2004. It ceased seeing the declarant, by the way, that was used to move for summary judgment. Your point there is you deserve a trial. Absolutely, Your Honor. That's your main request. Absolutely, Your Honor. We deserve a trial. Thank you. Why shouldn't they have a trial? Your Honor, they shouldn't have a trial because they did not put sufficient evidence in the Supreme Court in front of Judge Jackson. On the record before her, there was no basis for conducting a trial. But how could they? I mean, they didn't get a reasonable amount of discovery. And the Supreme Court itself has said you can't have a summary judgment motion. You can't stand that people without giving them a reasonable opportunity for discovery. And if I understand this record correctly, this case was staged until February of 2005, and you filed a summary judgment motion in April of 2005. Is my chronology correct? Only partly so, Your Honor. This case was filed in the very beginning of 2000. I said staged. Yes, I'm going – but I'm getting to – the state was not operative from the day of the filing of the lawsuit until the time you just announced it. I understand that, but I understand the lawsuit's hard, but it was staged. The stage was lifted in February 2005, correct? That is correct. And the summary judgment motion was filed two months later in April, right? Of 2005. That is also correct. Okay. Do you think that that period of two months is a reasonable period for discovery on these issues? Your Honor, that's not the relevant period to be looking at. There was three years of opportunity for discovery before the state went into place. Yes, but your general counsel submitted an affidavit saying that the relevant calculations weren't even in place during the period of the state. If you look at Appendix 561, Mr. Zimmer, he says this wasn't going on before. So how could they have conducted discovery about something that wasn't happening? Your Honor, the key issue here is that – Is that incorrect? My understanding is that the policies were first offered in 2002. So – and the state went into place in 2003. So there was a period of discovery. Well, if you look at 561, if I'm reading it incorrectly, but as I understand what he's saying, he's saying that during that earlier period, before the state went into place, these calculations weren't being made in connection with these policies. Let's go to paragraph 8. At the time, at least the prominence of the request for correction, the Metwide had no source code to produce because they had not yet implemented a system to administer. He said that was true as of February 13, 2002, but they started offering policies. My understanding is in the summer of 2002 and that there was an interim solution involving some – you have to calculate and track the values of the two different values, the stable value and the market value. And for an interim period, there was calculation of – or tracking the stable value via spreadsheets until that capability was imported into the bank. So this report didn't fault the bank for failing to make discovery in the period before the state, correct? Your Honor, the test here is – She did not. Okay. Do you think that the period between February 2005 when the state was listed and the filing subject of the summary judgment motion in April, two months later, was a reasonable period to conduct discovery? Your Honor, I'm not defending the two months, but that's not – again, I don't think that's the entirety of the relevant period to look at. First of all, document production commenced before the state was listed. The bank will receive over 200,000 pages of documents. And then the identification of 10,000 – about 10,000 documents that were specifically related to the administration of financial – Was there any reduction of the documents that were requested? No, Your Honor, but again – Did they make any depositions? They did not notice it, Your Honor. At any point during the period – Was that because they were waiting for the documents? I don't know why because it was in their control. But the test, Your Honor, here is whether there was, in fact, a gross abuse of discretion by Judge Jackson. And the arguments that were put in front – and the Eighth Circuit has said that the conclusion was – When was it supposed to conduct the discovery? I think you agreed that the two-month period between February and April wasn't a reasonable period to conduct discovery. When were they supposed to conduct the discovery? Your Honor, the document production commenced in late 2004, and we offered them additional time to study the source code – Just to study the source code. But there was no demand that they waive their right to any further discovery as they claimed in their papers. There was no – But Judge Jackson didn't rule on their 56-F motion until January of 2005. They were not stopped from aggressively pursuing discovery if they thought it was so essential. So their report was not conducting discovery after the filing of the 56-F motion? It was not commencing with the filing when the state was lifted in February. And once the motion – And instead, resting on a rule 56-F motion – And again, Your Honor, this is the critical inquiry. The Judge Jackson would use her discretion grossly based on the arguments that were made to her. And the argument that was made to her is hard to think in when they were supposed to conduct this discovery. When were they – From February. Not conducting the discovery. They should have – First of all, they should have moved – They could have, if they wanted to, as soon as this decision came down from this Court. They could have instituted and said this case should recommence and we need to get going with discovery. Here are our notices. And they had – Once February came, they could have aggressively started to serve with deposition notices. In fact, this case, when it was first filed in New York, discovery was only supposed to last less than a year. So it wasn't contemplated by the parties that they would take forever to pull out of discovery. Was there a discovery schedule? In the initial initiation of the lawsuit? Yes, Your Honor. In fact – No, no. After the state was lifted. Was there ever a discovery schedule? I believe the state was just lifted. I don't know if there was any schedule for – There was no schedule. I'm not aware of it, Your Honor. But the argument they made in support of their claim for discovery was, we think something's going to turn up. And the Eighth Circuit and this Court have said that that kind of speculation for a fishing expedition is not good enough. That's not correct. That's not correct. The Eighth Circuit is virtually every other circuit on the way around. What I understand is they don't get it. The Eighth Circuit has said that you have to allow people a reasonable period for discovery. In order to get a reasonable period for discovery, you do not have to show what you would have gotten. You're entitled to conduct depositions and declarants, get the documents that you've asked for, and have a reasonable period of time for discovery. And I'm concerned here that there was virtually no time for discovery after the state was lifted. And under those circumstances, I can't understand how the discovery can be refused, and you go right back to the judge. Your Honor, I submit that, again, there's a very narrow and deferential standard of review, and that the arguments that were made to Judge Jackson were – I mean, you have to understand, these plaintiffs had to conduct some sort of Rule 11 inquiry before they even brought this lawsuit. And they claimed that they had a basis for alleging infringement. When they responded to the summary judgment motion, they didn't put forward any of that supposed evidence that they had in their possession. They simply started citing planning documents that they had collected. And they had the core documents – Is your theory that in the case that you get discovery, you have to show that it was produced, that it was useful? No, Your Honor, but my theory is you have to – You don't have to show that. You do not, Your Honor. But you do have to show – Well, you do have to have a reasonable basis for alleging infringement. That's certain. But in terms of – If you had such a basis, you would be able to say – make some sort of concrete showing for why you expect, even though you've got 200,000 pages of documents and 10,000 have been identified as the core of the system, as well as the source code that is running the vantage system, why that's not good enough, why you need more than that. And what they offered was sheer speculation that they thought something else would turn up. Is that not entirely true? Did they want to depose Mr. Jansen, who was the defendant that the district court clearly believed, despite their claims that he wasn't being truthful? So that's not just – No, yes, Your Honor. You're right, Your Honor. There were two problems I haven't yet gotten to the second one. The first is we think there might be documents that contribute to our showing, and the second was we think the applicants are lying. We think they've perjured themselves. And the documents they relied on were not – Didn't the representatives of the company that you represent actually say repeatedly, we don't make this calculation, and then, boom, it turns out we do? You're saying, of course, oh, well, we don't make it in the relevant field, but you said repeatedly, we don't make it – you don't say we don't make it in the system. Your people actually said, we don't make this calculation, and we've got the ratio that's the same. No, Your Honor. No, Your Honor. I respectfully disagree. That is not what the record reflects. Mr. Jansen's testimony, if you look at the entirety of his first declaration, he says – they're taking one sentence out of one paragraph, but he leaves out a qualification that he's made repeatedly earlier in his declaration. And what he said was, when MetLife administers its state of value policies, it does not calculate the value – the difference between market and book value in the vantage system or outside of it. And he said that three different times, but he was referring each time to the administration of MetLife's policies. In the vantage system or outside of it. But it turns out, at least your argument to us today, and I understand it, is the calculation is made outside – No, but I'm sorry, Your Honor. Perhaps I emphasized the wrong words. He said, in its administration of MetLife's policies, it doesn't make this calculation in vantage or outside of it. He was limiting his representation to administration of MetLife's policies, and it was only the one sentence in the end where he says, I urge you because we'd like to provide these products, where he left out the qualification. I think it's useful for them to be able to pose Mr. Jansen on how he interprets what is in the administration of MetLife's policies. Because the financial, if you calculate the purposes of financial authority, I'm heart-wrested to see how that's not part of the administration of your policies, or at least part of the management of your policies, which is a different word from administration. So why wouldn't it have been useful for them to be able to at least oppose him to find out why it is he says it's not being done in this context? Your Honor, I would like to return to that point about what Mr. Verhoeven was finishing up on. Bancorp waived, and in this case it's sent back because this court concludes in its inactive discovery, Bancorp waived its argument that these claims are either limited to administration, or, excuse me, are not limited to administration, or that the word administration, imagine, is so broad that it encompasses MetLife's own internal accounting practices. MetLife made clear in its papers the basis for its motion, its understanding that there was such a limitation, and Bancorp acknowledged that that was the centerpiece and the central issue in the motion. They did not make any of the arguments they've made to this court about why the claims don't require the calculation in conjunction with administration. They didn't make the argument that administration is so broad that it encompasses internal financial reporting. In fact, quite to the contrary, if you look at the title in the docket entries, the key documents they're talking about, these financial records, they refer to as Spreadsheet for MetLife Policy Holders. So apart from the waiver, if they waive it, do you agree that they're right about the claim instruction? No, Your Honor, I don't. Is that why they're wrong about the claim instruction? Which claim instruction are you talking about? I'm talking about the claim instruction about whether it's an administration or management limitation. Because, Your Honor, if you look at the specification, and I believe it's in column... You pay much attention to the merits of the claim instruction issue in the brief. It would be helpful for you to tell us why they're wrong. But I believe we did note, Your Honor, in our brief, that there was, if you look at the passage where there's a reference to accounting, all of the administration that they identify in the specification concerns accounting with respect to a single policy. It's figuring out what the cost of insurance charges are, what the administrative fees for the investment managers, all related to a policy. There's one reference, and they don't identify any, where there's any discussion of the insurer's own internal reporting for its own accounting purpose. I'm talking about the specification. And so there's no evidence in the specification, which is why I submit they never raised these arguments below, because they didn't really think that there was such a limitation until they lost. And this Court has made repeatedly clear... They didn't think there was such a limitation. You mean they didn't think... They didn't think there was no... Well, they did not think that the calculation could be a freestanding calculation unrelated to policy administration. They didn't make that argument until they got here. So they completely, we say, unfairly sandbagged Judge Jackson by not flagging these arguments. They didn't cite any of these specification passages that they cited to this Court when they were before her. They tried instead to show... And if you look at JA, I believe it's... We get that all the time. People argue waiver when they have a problem. But, Your Honor, this Court has, in four separate cases that we've cited, said you can't review universal district court. We will not review universal district court's error-based and arguments that weren't presented to her. That's exactly what happened here. That is... For instance, maybe I would present the argument to you or them. They... Because I've read large parts of this record and it's not very clear. So, you know, come back to the question of whether they're right or wrong about the claim construction. Well, just one final effort on convincing them. They themselves said that the motions... You know, you answered the question that was asked. Sorry, Your Honor. There was nothing in their claim construction brief from Judge Jackson in the Hartford case. They did not contest the meaning of administration... But you're going back to the waiver question. You're not addressing the merits of the argument. Is their claim construction argument that they're making now right or wrong? It's wrong, Your Honor. Why? Because there is... The specification makes clear that the management and administration refers to management with respect to a policy, a stable value policy, which is why the preamble refers to... Why is the preamble pointing to? But, Your Honor, this is one instance in which, since they're... I say the specification makes this clear, and it's confirmed by the preamble. The specification itself, the only discussion with administration, concerns... The specification is not a claim limitation. Right? The preambles generally aren't claim limitations. Your Honor, I'm simply saying that to the extent that the term is open-ended, and their argument has one meaning, their argument is narrower... What term is open-ended? Management or administration. And that is a term in the preamble. So what Judge Teich has repeatedly tried to get you to do is explain why we should treat that as a limitation, because our general rule is that preambles are not limitations. Your Honor, I apologize if I'm misunderstanding the importance of the questions, but what I'm saying is the intrinsic evidence in the patent, in the specification, is that this term is limited to the administration of the policy, because the only references to functions that qualify as accounting all pertain to the actual administration of a policy, and there is nothing in the specification that supports the notion that it also includes an insurer's own financial reporting activities unrelated to individual policies. All right. Thank you, Your Honor. Counsel, I'd like to start with just one question related to discovery discussion that Judge Teich had in the closing counsel, and in particular, prior to the stay, there was a discovery schedule for the time up until the stay, right? Is that correct? Was there a discovery schedule? I don't believe so. The closing counsel said there was a discovery schedule in the earlier aspect. I think an important point is we didn't have a claim for patent infringement before the prior case. There was a declaratory relief claim that was made by MetLife, filed in New York, that we had transferred and consolidated. There was another case, a Sun Life case as well, that was filed. The parties basically put those cases, waited for the Hartford case to run its course on claim construction, so nothing really happened in those cases, and then what happened in the Hartford case, Your Honor... When did your infringement claim get consolidated with the MetLife, Hartford? We filed our infringement claim after the appeals ruled on the Hartford case, Your Honor. I don't have exact data off the top of my head, but it was prior... Prior to the stay. No, it was after the stay was lifted, so we didn't sue them for patent infringement before then, and we didn't allege that they infringed our patent before then. They filed a declaratory relief claim, and by the way, it said they weren't doing it, and so it wasn't until years later when we had a basis that they were in this business doing this that we filed the claim, and that was after the Hartford appeal, and of course, when the Hartford appeal was... That was that one. What was the date that you filed? I can get that before my two minutes are over, Your Honor. I have it right here. Yes, thank you. And we did, for the record, we did seek discovery throughout this process once the stay was lifted, and we had a whole list, and it's in the record, I can cite to you if you'd like, Your Honor, of things that we were asking them for, and they flatly refused to produce any of it pending their summary judgment motion, so any notion that they were willing to provide discovery while this thing was pending is not correct, Your Honor. But let me just circle back on the issue of... The date is July 13, 2004, Your Honor, is when we filed our complaint. And the stay remained in effect until February of 2005. Yes, Your Honor. Let me circle back to... I left off, I was about to quote a couple of documents, I think it's important to this issue of whether we should be entitled to take discovery. In particular, we cited to Your Honors an email in which a MetLife person, C. Singh, Mr. Jansen, who's a declarant, states, quote, there are currently seven general American stable value bully cases that are administered on spreadsheets, close quote. This is C. Singh, Mr. Jansen, who's a declarant, who doesn't address these documents at all in his declarations. What would we like to do? We'd like to take the deposition of Mr. Jansen and show him these emails and emails like this that are completely inconsistent with what he's saying and cross-examine. That's our right. And we were denied that right by the district court. So for no other reason than all these other arguments, this is a major reason why we should be, the district court committed an error, and we should be entitled to take some discovery. Thank you, Your Honor. All rise.